Jones, Chief Judge,
delivered the opinion of the court:
This is a suit for alleged infringement by the defendant of a patent issued to Robert Faries and now held by the plaintiffs.
The patent in suit relates to a spike to be used in railway construction and which, when used in combination with a track rail tie plate and wooden tie, limits the extent of the penetration of the spike into the wooden tie, and provides definite working clearance between the spike head and the flange of the rail. The specific provisions and purposes are set out in findings 4 and 5.
The Pennsylvania Railroad Company held a license to use such spike and to authorize others to manufacture it for the use of the company.
The defendant planned to construct the Conemaugh River Reservoir project in Pennsylvania. Portions of the Pennsylvania Railroad lines ran across the land covered by the proposed project.
The defendant and the Pennsylvania Railroad Company entered into a contract for the relocation of such portions of the railway line as were situated within the limits of the reservoir project. Pursuant to this agreement the defendant entered into an Army construction contract with the Wm. A. Smith Contracting Company to construct the track required by the relocation of the railway lines as specified by the Pennsylvania Railroad Company. In constructing this new trackage the construction company used the spikes and re *606 lated materials which were covered by the patent which had been issued to Eobert Faries.
The single question in this case is whether the license which had been issued to the Pennsylvania Eailroad Company was broad enough, when read in the light of the contracts and background of facts in this case, to cover the use of the patent by the Smith Contracting Company in building the few miles of replacement track.
From a date prior to the issuance of the patent until the date of his death Eobert Faries, the patentee, was continuously in the employ of the Pennsylvania Eailroad Company. On March 1,1933, in consideration of the payment of $238.50, Eobert Faries granted to the Pennsylvania Eailroad Company and other railroads, organizations and services owned, operated or controlled by it, an irrevocable license under the patent in suit. The pertinent parts of the licensing provisions are set out in finding 2.
The license granted to the Pennsylvania Eailroad Company its successors and assigns, the right to make the patented invention, the right to have it made for it by others, the unrestricted right to use it by whomsoever made, and the right to sell embodiments of the invention made initially for its use. It also included a right granted to the licensee “to make, have made, use and/or sell any improvements upon said patented invention for which the licensor may acquire additional patent or patents.” It further granted to the licensee the right to repair, renew, use, reform or replace.any part or parts, element or elements of the invention covered by the Letters Patent, which may become worn or broken, and which are necessary to the full and complete use and enjoyment of the invention.
The defendant and the Pennsylvania Eailroad entered into, a contract on April 16,1946, in which it was stated that acquisition of portions of the railroad by the Government and their relocation were necessary to the reservoir project. The defendant agreed that except as noted it would cause to be furnished at its expense the materials and cause to be performed at its expense the work for the relocation changes and alterations in strict accordance with the plans and.specifica-. tions which had been agreed upon between the railroad com *607 pany and the defendant. The railroad company agreed to furnish rail, angle bars, tie plates, rail anchors, frogs, derails, guard rails, guard rail fastenings, switches complete, switch stands and switch lamps. The pertinent parts of this contract are set out in finding 7.
On April 30, 1948, the defendant, through Colonel F. H. Falkner as contracting officer, contracted with the Wm. A. Smith Contracting Company for the latter company to construct the relocated portions of the Pennsylvania Eailroad lines. The pertinent parts of this contract are set out in finding 8. The contractor was to furnish and install track and switch ties, spikes, track bolts, nuts, nut locks, tie plugs, and sbims and install all material furnished by the Government as listed in the specifications, and all other material not specifically excepted which might'be necessary to complete the track ready for the operation of traffic.
The Smith Contracting Company requested the Pennsylvania Eailroad Company to specify a source of supply for the railroad spikes required by the specifications which had been included in the Smith contract. ■ The railroad company advised the Smith Company that such spikes were manufactured by the Jones & Laughlin Steel Corporation. The latter corporation had been making these spikes regularly for the Pennsylvania Eailroad Company.
The Smith Contracting Company began construction work on May 20, 1948, and in due course finished the relocation tracks. Throughout the period the Pennsylvania Eailroad Company through its inspectors maintained a daily inspection of the track work to determine whether the construction of the track complied with the requirements and specifications of the Pennsylvania Eailroad, each section of track being inspected during and also immediately following the actual construction thereof.
Under the terms of both the Pennsylvania Eailroad Company and the Smith Company contracts the Pennsylvania Eailroad took over the relocation lines in their entirety and thereafter used and maintained them.
According to the'terms of 'the Pennsylvania Eailroad Company contract the defendant agreed to grant and convey to the Pennsylvania Eailroad by quitclaim deed or deeds the *608 land required for the track relocations, together with all improvements on such land, including all track constructed under the Pennsylvania.Railroad and Smith contracts.
In consideration of the relocation of the portions of the-railroad lines lying within the limits of the reservoir project,, the Pennsylvania Railroad by the terms of its contract agreed to grant and convey to defendant all the Pennsylvania Railroad’s lands, rights-of-way, properties and other interests; constituting those portions of the lines lying within the limits of the reservoir project.
The plaintiffs claim that under the contract between the Smith Contracting Company and the defendant, the Jones & Laughlin Steel Corporation manufactured the supplies for the defendant without the license or.consent of the plaintiffs,, including track rail spikes as disclosed and claimed in the-Faries patent in suit.
The facts are not in dispute. The parties filed a joint motion asking leave for defendant to withdraw its general traverse and to substitute therefor the special plea of license- and further asking the court to determine the license defense first. The motion was allowed by the court. Pursuant to-this order the parties filed a. stipulation and proposed findings with the commissioner, and the commissioner in turn-prepared and filed a report pertaining to the single issue.
We think it clear that the terms of the license to the Pennsylvania Railroad Company cover the construction of the relocated tracks which were built for the Pennsylvania Railroad Company according to the specifications and subject to the inspection and approval of the designated inspectors for that Company.
According to the stipulated facts all rails and all tie plates of the accused structure were furnished by the Pennsylvania Railroad Company. The remaining elements, the ties and the spikes, were made according to Pennsylvania Railroad specifications and drawings.
The Pennsylvania Railroad Company maintained close supervision and designated the Jones & Laughlin Steel Corporation as the company from which the spikes should be obtained. It will be noted that in the Smith contract it was *609 provided that rail spikes should conform to the standards of the Pennsylvania Railroad and should be furnished and installed in accordance with specifications. The descriptive part of the Smith contract practically precludes any other .source of obtaining the materials and in fact the specifications in the Smith contract, as set out in finding 8, were the same as ■those which had been included in Article 2 of the Pennsylvania Railroad contract with the defendant.
It has been stipulated by the parties that the standards of the Pennsylvania Railroad fpr cut spikes as referred to in the : Smith contract consisted of the Pennsylvania Railroad drawing 69492-K. This same symbol .was used by the Pennsylvania Railroad Company in purchasing spikes from the J ones •& Laughlin Steel Corporation.
On May 11, 1948, the Pennsylvania. Roailroad Company .sent a letter to Jones & Laughlin which reads as follows:
In response to yours of May. 7 advising that you have an order from William A. Smith Contracting Company of Kansas City, Kansas, involving 5,000 kegs of 6y2 x %" Full-Throated Railroad Track Spikes, to be furnished according to.our Specifications for relocation of the C'onemaugh .Division, Saltsburg, Pa.
It will be satisfactory for you to furnish these Track Spikes, and you should ask for inspection in the usual manner.
We are unable to find any reasonable basis for the claim "that the patent has been infringed by the defendant. The terms of the license to the Pennsylvania Railroad Company .are very broad. The relocated track was built not for the defendant but exclusively for the use of the Pennsylvania Railroad Company, according to its specified terms and in compliance with its standards. While the Pennsylvania Railroad Company was not a party to the construction contract, the cross references are as effective as if it had been, and these must all be construed together. No one had any other thought than that the relocated track would be imme•diately turned over to the Pennsylvania Railroad Company. In fact, its contract with the defendant specified that this . should be done. The. specifications in both contracts made fit certain that the materials in question would be purchased *610 from the same company that had been making them right along for the railroad company under the broad terms of its license.
Since this ruling precludes any right of recovery by plaintiffs, the petition is dismissed. ■
Howell, Judge; Madden, Judge; Whitakek, Judge; and Littleton, Judge, concur.